Deborah **WERNER** and Joseph Werner, collectively and individually, and on behalf of Jason Werner, a minor, Plaintiffs,

v.

**CLARKSTOWN CENTRAL SCHOOL DISTRICT, Respondent.**

**No. 04 CIV.2349 CM LMS.**

United States District Court, S.D. New York.

March 31, 2005.

Sonia Castro, Regina Skyer and Associates, New York, NY, for Plaintiffs.

Carl Lewis Wanderman, Montebello, NY, for Respondent.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiffs are the parents of a minor child (hereinafter referred to as "JW") who, at the age of 14, began exhibiting emotional and psychological issues that led his mother to refer him to the Committee on Special Education ("CSE") at Clarkstown South High School ("CSHS"). Eventually, the parents unilaterally enrolled the student at The Hyde School, where he was enrolled for the 2002–2003 school year. The parents seek reimbursement for that placement, pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400, 1415. The District opposes that request.

The parents requested a hearing on their demand for reimbursement on January 10, 2003. After four days of testimony, the impartial hearing officer ("IHO") concluded (1) the District has done "everything possible" to provide the student with a free appropriate public education ("FAPE"); (2) nonetheless, the CSE had committed several procedural errors in developing JW's individualized education plan ("IEP"); (3) the District had failed to meet its burden of proving that these procedural irregularities did not result in the denial of a FAPE to JW; (4) the parents had not sustained their burden or proving that Hyde was in fact an appropriate placement for JW; and (5) equitable considerations did not favor reimbursing the parents for JW's tuition. Both sides appealed the rulings adverse to them. Upon review, the State Review Officer ("SRO"), in a thorough and well-reasoned opinion, sustained the IHO in every particular. He ruled as follows;

(1) Defendant denied JW a FAPE by seriously impinging on plaintiffs' ability to participate in the creation and formulation of their son's IEP. The District's transgression was its failure to have a representative of KidsPeace, the CSE's recommended therapeutic placement for JW, present (either in person or by telephone)

at JW's CSE meeting on October 31, 2002. Because of this, JW's mother could not ask questions or raise concerns about that proposed placement with a knowledgeable individual. The SRO found this particularly significant because the student's mother testified that she had a number of concerns about KidsPeace.

(2) Plaintiffs failed to meet their burden of proving that the school where they unilaterally placed their son—Hyde—was an appropriate placement. In particular, the SRO cited the testimony of the District's psychologist, its psychiatrist, and the witnesses with expertise in special education, all of whom testified that JW needed services that included psychotheraepeutic counseling to address his emotional disability. The parents failed to establish that Hyde provided such services. Therefore, the parents were not entitled to tuition reimbursement, regardless of the equities (which the SRO did not address).

Plaintiffs then commenced this action, in which they seek reversal of the second prong of the SRO's determination. The District defends the portion of the SRO's decision challenged by plaintiff, and also challenges the SRO's finding that procedural irregularities in the formulation of JW's IEP deprived the boy of a FAPE.

I conclude that there is nothing wrong with either of the SRO's determinations. I therefore grant the District's motion for summary judgment dismissing the complaint, and deny plaintiff's cross-motion for judgment in their favor.

*Applicable Standards*

Nearly all appeals from administrative decisions brought pursuant to IDEA are decided on motions for summary judgment. In deciding such a motion, a district court does not make the traditional inquiry into whether there are disputed issues of material fact. Rather, the court reviews the administrative record to see whether there has been compliance with IDEA.[1]

The SRO's decision is subject to independent judicial review. However, as the United States Supreme Court has cautioned, this fact "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities ...." *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Federal courts may not simply rubber stamp administrative decisions, but they must give "due weight" to the results of administrative proceedings, mindful that judges lack the specialized knowledge and experience required to resolve persistent and difficult questions of educational policy. *Walczak v. Florida Union Free School Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). As the Second Circuit noted in *Walczak*, deference is particularly appropriate where, as here, the state hearing officers' review has been thorough and careful. In this regard, I must note that the decisions of both the Independent Hearing Officer (IHO) and the State Review Officer explore the evidence thoroughly, make detailed factual findings that are supported by the evidence, and cogently explain the reasons for the conclusions they reach. The SRO's decision is well-reasoned and well-supported by citations to relevant portions of the record. It is owed such deference as I am expected to give to a thorough and careful administrative determination.

■ Where, as here, the court is dealing with the question of reimbursement for a unilateral parental placement, the rules

---

1. I note that in this case, the SRO appropriately considered material that had not been before the IHO. I, too, consider that additional material in reaching this decision.

are clear. A Board of Education may be required to pay for educational services obtained for a student by his or her parent, if (i) the services offered by the board of education were inadequate or inappropriate, (ii) the services selected by the parent were appropriate, and (iii) equitable considerations support the parents' claim. *School Committee of Burlington v. Dept. of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The district bears the burden of proof on the first issue; the parents have the burden of proof on the others. *M.S. v. Board of Education of the City School District of Yonkers*, 231 F.3d 96, 102, 104 (2d Cir.2000).

In discharging its burden of proving that the district's plan afforded a child a FAPE, two issues are usually relevant: whether the state complied with the procedural requirements of IDEA and whether the challenged IEP was "reasonably calculated to enable the child to receive educational benefits." *Rowley, supra,* 458 U.S. at 206–07, 102 S.Ct. 3034. The District must satisfy its burden on both issues.

■ I have little difficulty affirming the SRO's conclusion that the District failed to comply with the procedural requirements of IDEA in a way that prejudiced the right of JW's parents to participate meaningfully in the formulation of their son's IEP.

If a recommended placement is to be in a school other than the school the student would attend if he did not have a disability, federal and state regulations require that a representative of the proposed placement school attend the CSE meeting at which the IEP containing the placement recommendation is developed. The District is responsible for ensuring the representative's attendance, either in person or by telephone. 34 C.F.R. § 300.349(a)(2); 8 NYCRR 200.4(d)(4)(i)(a). Here the relevant meeting took place on October 31, 2003. No representative of KidsPeace was

at the meeting, in person or by telephone. Furthermore, no KidsPeace representative contacted JW's parents either before or after the meeting. While the record does reveal that JW's mother told Clarkstown officials that she would visit KidsPeace, the District bears the burden of ensuring the representative's attendance and cannot rely on the parent's expressed intention to visit the school to relieve it of that burden. The violation is clear.

Of course, procedural flaws do not automatically require a finding of a denial of a FAPE. But procedural inadequacies that individually or cumulatively result in the loss or educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP constitute a denial of FAPE. *Knable v. Bexley City School District,* 238 F.3d 755, 766 (6th Cir.2001), cert. Denied, 533 U.S. 950, 121 S.Ct. 2593, 150 L.Ed.2d 752 (2001). Here, the District would have me focus on the fact that JW lost no educational opportunity as a result of the procedural violations. However, the SRO concluded—correctly, in my view—that the problem here was an infringement on plaintiffs' right to be involved in the creation of their son's IEP. The parties do not appear to have had any serious dispute over the propriety of a residential placement. The issue between them was what residential placement. The District was advocating placement at KidsPeace (and eventually put that recommendation into the IEP). The parents were not provided with an adequate opportunity to explore that program with a representative of the program. For this reason, the District's request that I overturn the decision of the SRO to that extent cannot be granted.

■ Turning then to the parents' request for relief: I cannot reverse the SRO's determination that the parents are not entitled to reimbursement, either. In-

deed, I have never seen a record so utterly devoid of evidence concerning the propriety of the parents' choice of school.[2]

Where the parents of a disabled child file suit under IDEA to seek reimbursement for expenses incurred at a private school, an award in their favor may be entered only if it appears that the private education services obtained by the parents were appropriate to the child's needs. *School Comm. of Burlington v. Dept. Of Education of Massachusetts,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The private school need not employ certified special education teachers, or have its own IEP for the student. However, the mere fact that the school is private is not enough; the private school's program must address the student's special education needs.

The IHO and SRO both concluded that JW needed a placement at a school that provided therapeutic services to address his emotional and psychological disabilities. The record amply supports their conclusion, and, indeed, the parents do not dispute it.

Given that, it is indisputable that the parents failed to sustain their burden of showing that The Hyde School offered JW the sort of special education services he needed. The Director of Studies testified that the school does not consider itself to be a therapeutic school and does not provide any special educational services. (Tr. 448, 488–89.) Of particular moment to JW's situation, counseling is provided at Hyde only where a student's parents ask for it—and pay separately for it. It is not part of the normal program of the school. (Tr. 463.) Moreover, the Director of Stud-

ies could not vouch for the credentials of the person who provides this counseling.

The school does not prepare written behavioral plans for students who manifest behavioral difficulties. (Tr. 468.) Rather, it does not "tolerate" what it calls "unproductive behaviors." Disciplinary sessions for minor infractions of rules (which the school calls "disciplinary workout sessions") are monitored by someone without psychological or counseling training, often a college student who is interning rather than by a faculty member. (Tr. 470–71.) More significant infractions result in a student's being assigned to a "work crew" that takes the student away from all classroom instruction for several days and causes them to spend the entire day engaged in what the Director of Studies candidly called "mindless labor." (Tr. 472.)

The parents have utterly failed to establish that Hyde was an appropriate placement for their son. The District need not assume the cost of sending JW there.

■ The SRO did not reach the issue of the equities, because he did not need to. However, were it to prove relevant, I would agree with the IHO that the parents are not equitably entitled to reimbursement. It appears that plaintiffs' purported cooperation with the CSE concerning a placement for JW for the 2002–2003 school year was a sham. JW was accepted at Hyde on February 8, 2002—before he was ever referred to the CSE or evaluated for special education services by the District. One week *after* he was accepted at Hyde—with the acceptance contingent on the parents' sending him to that school for the summer of 2002 and for the next two school years—the parents first approached Clarkstown South and sought special edu-

---

**2.** This extends to the memorandum of law submitted on behalf of plaintiffs. Not only was the brief a mere two pages long, but the principal "authority" cited is a remark made by an unspecified speaker—perhaps an advocate, perhaps a Justice of the United States Supreme Court—during oral argument of an IDEA case!

cation services for JW. They did not reveal that they had already applied to, and been accepted at, a private school—not at the time they first consulted with the CSE,and not until just before the 2002–2003 school year was to begin.

Obviously, what went on here was that the parents decided to send a troubled son to private school in September 2002, found a school they liked (with no regard whatever for what his special education needs might be, because there had as yet been no assessment and no determination about his needs), got their son accepted at the school, and then took steps to try to get the District to pay for the boy's private school education. The equities are clearly not on their side.

The Defendant District's motion for summary judgment dismissing the complaint is granted. The parents' cross-motion is denied. The Clerk of the Court is directed to enter judgment for defendants and to close the case.